Sophia Goren Gold (SBN 307971)
**KALIEL GOLD PLLC**
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783
sgold@kalielgold.com

Jeffrey D. Kaliel (SBN 238293)
Amanda J. Rosenberg (SBN 278507)
**KALIEL GOLD PLLC**
1100 15th Street NW 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com
arosenberg@kalielgold.com

*Counsel for Plaintiff and Proposed Classes*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JORDAN GOULSON, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

ECOCART SCIENCES, INC.,

Defendant.

Case No. '25CV3463 JES JLB

**CLASS ACTION COMPLAINT**

[DEMAND FOR JURY TRIAL]

Plaintiff Jordan Goulson, on behalf of himself and all others similarly situated, complains and alleges upon information and belief based, among other things, on the investigation made by Plaintiff and through his attorneys, as follows:

## INTRODUCTION

1. This is a proposed class action seeking monetary damages, restitution, and public injunctive and declaratory relief from EcoCart Sciences, Inc. ("EcoCart"), arising from its unfair and deceptive addition of junk fees to consumers' shopping carts.

2. When consumers browse products on e-commerce websites, the e-

commerce websites advertise the price of their retail items, along with an advertisement for either free or flat-rate shipping. Those pricing representations are false, however, because EcoCart encourages e-commerce retailers to surreptitiously add junk fees to consumer purchases, including EcoCart's so-called "Green Shipping Protection" and "Carbon Neutral Order" fees.

3. As discussed in detail herein, the assessment of these fees is deceptive and unfair, since: (a) EcoCart sneaks these fees into consumers' shopping carts; (b) the fees are nothing more than an additional cost for shipping, rendering retailer promises for "free" or flat-rate shipping false; (c) the fees themselves are deceptively named and described; and (d) the fees provide no added value to consumers and reasonable consumers, like Plaintiff, who would not knowingly choose to pay them absent EcoCart's deception.

4. Thousands of e-commerce customers like Plaintiff have been assessed hidden charges for which they did not bargain due to EcoCart's deceptive and unfair tactics.

5. By unfairly obscuring consumers' true shipping costs, EcoCart deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true shipping charges. To wit, most major e-commerce sites do not assess such a fee.

6. Plaintiff seeks damages and, among other remedies, public injunctive relief that will fairly allow consumers to decide for themselves whether they will pay EcoCart's fees.

## PARTIES

7. Plaintiff Jordan Goulson is a resident and a citizen of Los Angeles, California.

8. EcoCart is an American software company incorporated in Delaware and headquartered in San Diego, California, that provides services to e-commerce retailers.

///

///

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this action, among other reasons, under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed Class resides outside California; and (3) the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because EcoCart is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I. The Rise of EcoCart

11. EcoCart offers various services to e-commerce retailers related to shipping, including its purported "Green Shipping Protection" and "Carbon Neutral" ordering.

12. EcoCart ingratiates itself with e-commerce retailers by promising it can help retailers make more money from the shipping rates they charge consumers. For example, EcoCart promises to help retailers "[t]urn [e]very [o]rder [i]nto [p]rofit" through its services:




13. But the way in which EcoCart helps e-commerce retailers reap these profits is through deception. As described herein, EcoCart directs e-commerce retailers who use its services to install a widget on their websites. That widget adds a hidden, *pre-selected* box or toggle that automatically adds junk fees, like the fee seen in the image above, to all orders. This method of adding on fees is designed to go undetected by consumers and thus provide additional revenue to both EcoCart and e-commerce retailers who use it:




14. On information and belief, EcoCart designs the interface presented by merchants to consumers regarding the add-on fee, including the name of the fee, the time at which the fee is first mentioned during the checkout process, the time at which the fee amount is added to the purchase price, and the pre-selection of the box or toggle for the fee. On information and belief, EcoCart uses sales tactics that pressure merchants into pre-selecting boxes or toggles at checkout that automatically add shipping protection and other fees by default.

15. The *Wall Street Journal* has highlighted this problem, stating:

> Some brands automatically add optional coverage to orders. ***Customers have complained the fees are disclosed in small fonts, made to appear mandatory when they are not or are displayed late in the online checkout process***.

Imani Moise, *Porch Pirates are Now Raising the Price You Pay at Checkout*, Wall Street Journal, Dec. 25, 2024, available at https://www.wsj.com/personal-finance/package-theft-hidden-fee-higher-prices-325c4a34?mod=Searchresults_pos3&page=1 (emphasis added).

16. Upon information and belief, EcoCart is aware that, by programming its widget to automatically opt in consumers to its "Green Shipping Protection," "Carbon

Neutral Order," and other similar fees, most consumers will unknowingly purchase these services. EcoCart is further aware that, if its widget were programmed to offer *optional* shipping protection and/or other similar services (requiring an opt-in), the vast majority of consumers would not purchase its services.

17. Worse, EcoCart's widget automatically opts consumers into additional shipping-related junk fees even when the e-commerce website at issue expressly and prominently promises that shipping is completely "free" or has a flat price.

18. EcoCart receives a significant portion of all fees it is able to foist upon consumers, thereby incentivizing EcoCart to minimize the number of persons who opt out of its fees.

19. Because EcoCart's practice is deceptive and unfair, Shopify, which handles the technology infrastructure for many direct-to-consumer brands and larger companies, recently informed merchants that automatically adding optional charges at checkout would be banned as of February 2025. *Id*.

20. This ban is too little, too late to help Plaintiff and the hundreds of thousands of other consumers already deceived and exploited.

## II. <u>EcoCart Surreptitiously Adds Fees to Consumers' Carts</u>

21. Here's how EcoCart's deception works. When a consumer views an item online through an e-commerce retailer, the consumer is informed that the item will either be delivered for free or for a flat rate.

22. Once the consumer begins the checkout process of the e-commerce retailer's website, a small "Green Shipping Protection," "Carbon Neutral Order," or similar fee is added to the cart, without the consumer having done anything at all to have added the item to the cart.

23. While the e-commerce retailer's checkout page displays the prechecked box adding the fee, the box is tiny and purposely designed to go unnoticed by consumers. So, consumers who wish to check out under the assumption that they are receiving free or flat-rate shipping simply proceed through the checkout process

without knowing that they are not, in fact, receiving free or flat-rate shipping. Consumers are left entirely unaware that the added "Green Shipping Protection," "Carbon Neutral Order," or other similar charge is optional and must be removed by *unchecking* the box adding the fee.

24. Thus, if consumers even *notice* a fee added to their transaction, they are still left entirely unaware that the added fee is optional, because it is presented in the cart as mandatory.

25. This pre-selection and automatic opting in of consumers to junk fees is itself unfair and deceptive.

26. Many consumers do not notice that an additional fee is being added to their order. Others believe that they have no choice but to pay this fee. Others notice the previously undisclosed fee but decide to go through with the purchase anyway: they have already invested substantial time and effort inputting their information into EcoCart's system. So it doesn't make sense to start over and research whether there may be some other way to avoid the fee. There is no incentive to reverse course—there is only an incentive to pay the fee, be done with it, and avoid the burden of finding a way to avoid the fee, if the consumer can even figure out how to avoid the fee at all after navigating EcoCart's deceptive screens. The deceptive checkout practice has done its job and diverted the sale to EcoCart.

27. As the FTC notes, "[f]or years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-checked boxes, hard-to-find-and read disclosures, and confusing cancellation policies, to get consumers to give up their money or data." *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers,* Sept. 15, 2022 (available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers).

28. The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that **"[a] 'pre-checked box' does not constitute**

**affirmative consent."** https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 13 (emphasis added). Similarly, an item automatically added to the cart, without having done anything whatsoever to add that item, does not constitute affirmative consent.

## III. EcoCart's Add-On Fees Render Promises of Free or Flat-Rate Shipping False

29. Even beyond the deceptive way in which EcoCart's fees are added, the fees themselves are additionally deceptive because they directly contradict other promises on e-commerce retailers' websites regarding "free" or flat-rate shipping. That is because EcoCart's add-on fees are actually a disguised shipping charge.

30. Whatever EcoCart's fees are for—and as described herein, it is totally unclear—they are somehow related to shipping of the products purchased by consumers.

31. But, as described herein, e-commerce websites that use EcoCart's widget promise "free" shipping on certain orders and a flat-rate price for shipping on other orders. These are clear promises that the total, marginal cost of having products shipped—that is, moved from the retailer to the consumer—are represented by the "free" or flat-rate shipping price representation.

32. However, EcoCart decided it could actually charge more for shipping, thereby increasing profitability for both EcoCart and the e-commerce retailer, by misrepresenting the true shipping costs to consumers.

33. EcoCart was aware, or should have been aware, that consumers were and would be deceived by an add-on shipping fee at the same time that a promise of "free" or flat-rate shipping was being made.

34. EcoCart's deceptively-added "Green Shipping Protection," "Carbon Neutral Order," and other similar fees are hidden shipping fees. This renders false e-commerce retailers' promise of a free or a flat, low-cost shipping fee.

35. By unfairly obscuring its charges to consumers, EcoCart deceives consumers and gains an unfair upper hand over its competitors.

## IV. EcoCart's "Green Shipping Protection," "Carbon Neutral Order," and Other Similar Fees Are Inaccurately Named and Described and Provide No Added Value to Consumers

36. In addition to the manner in which EcoCart's fees are added and the fact that the added fees render other "free" or flat-rate shipping promises false and deceptive, EcoCart's fees are nonsense fees that provide little or no value to consumers.

37. Even beyond the deceptive manner in which the fees are added and the fact that the fees themselves directly contradict other promises on e-commerce retailers' websites regarding "free" or flat-rate shipping, EcoCart's "Green Shipping Protection" fees are also deceptively named and described.

38. First, these fees provide little or no *additional* "protection" for shipments than already exists. Most online retailers provide replacements and allow for returns of products. Therefore, the shipping protection fee provides no extra protection for goods that arrive damaged. EcoCart misrepresents and omits material facts about that truth.

39. Moreover, popular shipping services like UPS, Federal Express, and USPS Priority Mail *automatically* include shipping protection for the first $100 worth of value in a package when goods are not delivered, stolen or damaged. EcoCart misrepresents and omits material facts about that truth, too. Thus, for the vast majority of consumers—those who are paying to ship a product costing less than $100—"shipping protection" is entirely worthless, because they are already provided the same protection by the shippers.

40. Additionally, in the event goods are not delivered, stolen, or damaged, consumers can report the issue to their credit card company or bank, who will often reverse the charge. Indeed, credit cards are a popular option for consumers making online purchases for this reason.

41. For all these reasons, EcoCart's "Green Shipping Protection" fee is

deceptively named and described.

42. Even beyond the deceptive manner in which EcoCart's "Green Shipping Protection" fees are added, the fact that the fees themselves directly contradict other promises on e-commerce retailers' websites regarding "free" or flat-rate shipping, and the fact that the "Green Shipping Protection" fees are deceptively named and described, these fees also provide virtually no additional value to consumers. No reasonable consumer would knowingly elect to pay for "Green Shipping Protection" because it provides essentially zero additional value to consumers.

43. As described above, damaged goods may already be returned to the retailer; third party shipping services like USPS, UPS, and FedEx already provide some insurance coverage; and lost or stolen packages can be reported to credit card companies for chargebacks. Accordingly, the additional fee serves no purpose.

44. On information and belief, a significant portion of the fee does not even go toward shipping protection but instead goes toward EcoCart's and e-commerce retailers' profits.

45. EcoCart's so-called "Carbon Neutral Order" fees are also deceptive and provide little or no value to consumers.

46. On its website, EcoCart defines a "Carbon Neutral Order" as one in which "there was not any net new carbon produced when that package was shipped and delivered to its final destination." FAQS, EcoCart, available at https://ecocart.io/pricing/ (last accessed Oct. 10, 2025). Ostensibly, EcoCart's "Carbon Neutral Order" fees represent carbon offsets—extra fees paid by a consumer to a merchant to counterbalance the environmental impact of the overall transaction.

47. On information and belief, when consumers pay for a "Carbon Neutral Order," EcoCart forwards a percentage of the fee to one or more third-party environmental conservation projects. EcoCart touts its "Carbon Neutral Order" fees as

causing an "immediate positive impact on the environment":

## How do carbon offsets work?

Carbon offsets are a practical and effective way to reduce the effects of climate change by funding renewable energy, forestry, or clean water projects. These projects reduce emissions of carbon dioxide or other greenhouse gasses in order to compensate for unavoidable emissions made elsewhere, like the emissions created from ordering something online.




WHY CARBON OFFSETS

## Offsetting enables you to make an impact, today.

Carbon offsetting is a necessity in any serious sustainability strategy because sustainability isn't just about mitigation. Business operations have been emitting carbon into the atmosphere for centuries now, which means we need to be removing carbon from the atmosphere in addition to avoiding emitting any more. Carbon offsets enable you to have an immediate positive impact on the environment by funding projects like restoring and protecting forests, creating clean energy sources, and more.

48. But, on information and belief, customers who pay the "Carbon Neutral Order" fee are provided no means at the point of sale to verify: (1) what portion of the fee EcoCart forwards to these projects, or (2) what specific project(s) the customer is funding.

49. EcoCart's lack of transparency at the point of sale regarding its "Carbon Neutral Order" fees renders the fees completely opaque, leaving customers no way of determining whether their order is indeed carbon neutral.

50. The *New York Times* has highlighted this problem, explaining that "carbon neutral" shipping fees offered by online retailers are simply "too good to be true":

> [G]oing carbon neutral at checkout means you're donating to what is "essentially a philanthropic effort," said Danny Cullenward, policy director at the nonprofit CarbonPlan. . . . **If you're weighing if you should pay for carbon neutral add-ons in hopes that you actually offset shopping emissions, one-to-one and more or less in real time, you can walk away, full stop.**
>
> ***
>
> Companies may fund offsetting projects or removal technologies that never really take off, but they use them to overreport their emissions reductions or claim that they are carbon neutral today. **Worse, they may not do what is actually required—significantly reduce their emissions—and may even increase them.** This is dangerous, considering that global greenhouse gas emissions (often discussed in carbon dioxide equivalents) must net out at zero by 2050 if we're to avoid the worst impacts of climate change.
>
> "If you want to drop some money in a bucket, fine," said Sadie Frank, a program manager at CarbonPlan. "But it's not necessarily doing the thing that you think it's doing."

Katie Okamoto, *Don't be Fooled by 'Carbon Neutral' Shipping*, The New York Times, Nov. 21, 2022, available at https://www.nytimes.com/wirecutter/blog/what-is-carbon-neutral-shipping/ (emphasis added).

51. In the same piece, the *Times* criticizes EcoCart for its "complicated and opaque" "Carbon Neutral Order" fees, explaining that the fees are little more than a marketing ploy:

> On EcoCart's website, for example, it says it can help "keep shoppers coming back for more" with "sustainability content and promotions" and "drive conversion" (e-commerce speak for how many times a customer completes a checkout). **The pitch to businesses to ask you to "make your purchase carbon neutral" appears to get you to shop more**, an inherently unsustainable act.

*See id.* (emphasis added).

52. Because of the lack of transparency inherent in carbon-neutral order fees, prominent environmental organizations such as ClientEarth, ShareAction, Oxfam, Amnesty International, and Greenpeace jointly condemn carbon offsets due to their ineffectiveness in curbing emissions. *Will This Be the End of Carbon Offsets?*, CarbonCredits.com, July 5, 2024, available at https://carboncredits.com/will-this-be-the-end-of-carbon-offsets/.

53. Because EcoCart provides no means of verifying that these extra fees actually make a customer's order carbon-neutral, EcoCart's "Carbon Neutral Order" fees are deceptive and lack value to customers.

## V. EcoCart's Fees are Junk Fees and Violate Federal and State Guidance

54. EcoCart's fees, such as its "Green Shipping Protection" fee and "Carbon Neutral Order" fee, are precisely the type of "Junk Fees" that have come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition, Mar. 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3.

55. As the Federal Trade Commission said recently regarding its effort to combat Junk Fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Fed. Trade Comm'n, FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees, Oct. 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

56. In July 2024, California expanded its Consumers Legal Remedies Act ("CLRA"), amending it to make "drip pricing" illegal. Drip pricing is advertising a price that is less than the actual price that a consumer will have to pay for a good or

service. *See* Cal. Civ. Code § 1770(a)(29). Under the new California law, it is now illegal to advertise a low price for a product, only for that product to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay." *See* California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed Sept. 16, 2025). As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.

*Id*. at p. 4 (emphasis added).

57. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that, when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy—for example, before the consumer "add[s] to shopping cart." *See* Fed. Trade Comm'n, .com Disclosures: How to Make Effective Disclosures iN Digital Advertising at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

58. EcoCart's conduct also violates the federal Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401–05 ("ROSCA"). Specifically, EcoCart used "negative option" sales "[that] took advantage of consumers' expectations." *Id*., § 8401(8). Moreover, EcoCart violated ROSCA by using a negative option feature that (1) did not provide text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; and (2) did not

obtain the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction. *Id.*, § 8403(1), (2).

59. EcoCart violates federal guidance by adding its "Green Shipping Protection," "Carbon Neutral Order," and similar fees as line items after the consumer "add[s] to shopping cart," and by failing to disclose the nature of these fees.

## VI. Plaintiff's Experience

60. Plaintiff purchased a pair of TechLoom Breeze running shoes from Athletic Propulsion Labs ("APL"), an online footwear retailer, on February 14, 2025.

61. Plaintiff believed—and his receipt confirms—that APL charged zero shipping fees for this order.

62. However, Plaintiff's purchase also included a $1.76 "Carbon Neutral Order" fee from EcoCart that was automatically and surreptitiously added to his cart, that—for the reasons described above—in fact represented an additional shipping charge.

63. Plaintiff did not know the "Carbon Neutral Order" fee existed or that it could have been removed prior to his February 14, 2025 purchase.

64. Plaintiff would not have chosen to make a "Carbon Neutral Order" if he had known it was optional.

## CLASS ALLEGATIONS

65. Plaintiff brings this action on behalf of himself and a nationwide Class of all other similarly situated persons. The proposed Class is defined as:

> All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, paid a "Green Shipping Protection," "Carbon Neutral Order," or any other similar fee for a service provided by EcoCart.

66. Plaintiff also brings this action on behalf of a California Subclass.

67. Excluded from the Classes are EcoCart, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors,

employees, and members of such persons' immediate families, and the presiding judge(s) in this case and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

68. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

69. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because EcoCart has acted on grounds generally applicable to the Classes. Such common legal or factual questions include, but are not limited to:

a. Whether EcoCart engaged in conduct that prevented or hindered the performance of the contract between e-commerce retailers and the Classes;

b. Whether EcoCart's alleged misconduct misled or had the tendency to mislead consumers;

c. Whether EcoCart engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d. Whether EcoCart's alleged conduct constitutes violations of the laws asserted;

e. Whether Plaintiff and members of the Classes were harmed by EcoCart's misrepresentations;

f. Whether EcoCart was unjustly enriched;

g. Whether Plaintiff and the Classes have been damaged, and if so, the proper measure of damages; and

h. Whether an injunction is necessary to prevent EcoCart from continuing to engage in the wrongful conduct described herein.

70. The parties are so numerous that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of EcoCart and can be ascertained only by resort to EcoCart's records. EcoCart has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

71. It is impracticable to bring the individual claims of members of the Classes before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

72. Plaintiff's claims are typical of the claims of other Class members in that they arise out of the same wrongful business practices by EcoCart, as described herein.

73. Plaintiff is a more than adequate representative of the Classes in that Plaintiff is EcoCart's customer and has suffered damages because of EcoCart's misrepresentations. In addition:

a) Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of consumer class actions;

b) There is no conflict of interest between Plaintiff and the unnamed Class members; and

c) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

74. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

75. EcoCart has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate corresponding declaratory relief with respect to the Classes as a whole.

76. All conditions precedent to bringing this action have been satisfied and/or waived.

**FIRST CLAIM FOR RELIEF**
**Tortious Interference with Contract**
**(On Behalf of Plaintiff and the Nationwide Class)**

77. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

78. Plaintiff and the Class have contracted with e-commerce retailers for the purchase of merchandise.

79. EcoCart had knowledge of the contractual relationship or prospective contractual relationship between e-commerce retailers and Class members like Plaintiff.

80. EcoCart engaged in conduct that prevented or hindered the performance of the contract between e-commerce retailers and the Class by (a) deceptively adding fees into consumers' carts; (b) deceptively naming and describing its fees; (c) charging Plaintiff and Class members for shipping above and beyond what was promised to them; and (d) charging fees that provide no added value to consumers when reasonable consumers, like Plaintiff, would not knowingly choose to pay them, absent EcoCart's deception.

81. EcoCart intended to prevent or hinder performance of the contract between e-commerce retailers and the Class, including Plaintiff. As a result, Plaintiff and the Class were harmed.

82. EcoCart's conduct as described herein substantially caused the harm inflicted on Plaintiff and the Class.

**SECOND CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

83. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

84. To the detriment of Plaintiff and the Class, EcoCart has been, and continues to be, unjustly enriched because of its wrongful conduct alleged herein.

85. Plaintiff and the Class conferred a benefit on EcoCart.

86. EcoCart unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which, under the circumstances, would be unjust to allow EcoCart to retain.

87. EcoCart's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

88. Damages may not adequately compensate the harms Plaintiff and the Class sustained because they are not as certain, equally prompt, or otherwise efficient as restitution. Plaintiff must engage in discovery to determine whether money damages will adequately remedy these harms.

89. Plaintiff and the Class therefore seek disgorgement of all fees wrongfully retained by EcoCart because of its inequitable conduct as more fully stated herein.

**THIRD CLAIM FOR RELIEF**
**Violations of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**
**(On Behalf of Plaintiff and the Nationwide Class, or in the Alternative, the California Class)**

90. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

91. EcoCart's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq.*

92. The UCL prohibits, and provides civil remedies for, unfair competition.

Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

93. The UCL imposes strict liability. Plaintiff need not prove that EcoCart intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—only that such practices occurred.

94. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

95. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

96. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

97. EcoCart committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly (a) sneaking fees into consumers' carts; (b) deceptively naming and describing the fees; (c) charging fees that are, in actuality, simply the price involved in the shipping process; and (d) charging fees that provide no added value to consumers.

98. EcoCart engages in unfair business practices insofar as the harm to Plaintiff and the Classes from EcoCart's practices outweighs the utility of EcoCart's practices. There were reasonably available alternatives to further EcoCart's legitimate business interests, other than engaging in the immoral, unethical, oppressive, and unscrupulous conduct described herein. EcoCart's acts and practices offend California's and the federal government's established public policy of truthful advertising in the marketplace and constitute immoral, unethical, oppressive, and unscrupulous activities that substantially injure consumers.

99. EcoCart's conduct constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections 1770(a)(3), (5), (9), (14), (20), and (29) of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq*.

100. EcoCart's conduct also constitutes an "unlawful" act under the UCL because it violates the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401–05 ("ROSCA"). Specifically, EcoCart used "negative option" sales "[that] took advantage of consumers' expectations." *Id*., § 8401(8). Moreover, EcoCart violated ROSCA by using a negative option feature that (1) did not provide text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; and (2) did not obtain the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction. *Id*., § 8403(1), (2).

101. EcoCart's business practices have misled Plaintiff and the Class and, unless enjoined, will continue to mislead them in the future.

102. Plaintiff relied on EcoCart's misrepresentations.

103. EcoCart deceived Plaintiff and the Class into purchasing services that they otherwise would not have purchased.

104. As a direct and proximate result of EcoCart's unfair, fraudulent, and unlawful practices, Plaintiff and the Class suffered and will continue to suffer actual damages by paying for services that they did not want or need. EcoCart's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff and the Class that they will be deceived. Plaintiff desires to conduct further business with EcoCart by continuing to make online purchases through websites that partner with EcoCart. But Plaintiff cannot rely on EcoCart's representations unless an injunction is issued.

105. As a result of its unfair, fraudulent, and unlawful conduct, EcoCart has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Business & Professions Code

sections 17203 and 17204.

106. Pursuant to Business & Professions Code sections 17203 and 17500, Plaintiff and Class members, on behalf of the general public, seek an order enjoining EcoCart from continuing to engage in, use, or employ its unfair, unlawful, and fraudulent practices.

107. Plaintiff has no adequate remedy at law in part because EcoCart continues to automatically add fees to all purchases. Therefore, an injunction on behalf of the general public is needed to prevent EcoCart from continuing to engage in the unfair, deceptive, and misleading practices described herein. Such a remedy cannot be obtained through any of Plaintiff's legal causes of action.

## FOURTH CLAIM FOR RELIEF
### False and Misleading Advertising
### (Bus. & Prof. Code §§ 17500, et seq.)
### (On Behalf of Plaintiff and the Nationwide Class, or in the Alternative, the California Class)

108. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

109. California's False Advertising Law ("FAL"), California Business and Professions Code section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

110. EcoCart's material misrepresentations and omissions alleged herein violate Business and Professions Code section 17500.

111. EcoCart knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

112. Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiff and Class members, on behalf of the general public, seek an order enjoining EcoCart from continuing to engage in, use, or employ its deceptive practices. Such an order is not obtainable through any of Plaintiff's legal causes of action, making any remedy at law inadequate.

113. Further, Plaintiff requests an order awarding Plaintiff and Class members restitution of the money wrongfully acquired by EcoCart by means of said misrepresentations.

114. Additionally, Plaintiff and Class members seek an order requiring EcoCart to pay attorneys' fees pursuant to California Civil Code section 1021.5.

**FIFTH CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of Plaintiff and the Nationwide Class, or in the Alternative, the California Class)**

115. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

116. This cause of action is brought pursuant to the Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1750, *et seq*. Plaintiff and each member of the proposed Classes are "consumers" as defined by California Civil Code section 1761(d). EcoCart's sale of merchandise and shipping insurance to consumers were "transactions" within the meaning of California Civil Code section 1761(e). The merchandise purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code section 1761(a).

117. EcoCart violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of merchandise:

a. "Misrepresenting the affiliation, connection, or association with, or certification by, another" (a)(3);

b. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

c. "Advertising goods or services with intent not to sell them as advertised" (a)(9);

d. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14)

e. "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product" (a)(20); and

f. "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" (a)(29).

118. Specifically, EcoCart (a) deceptively added fees into consumers' carts; (b) deceptively named and described the add-on fees; (c) charged Plaintiff and Class members for shipping above and beyond what was promised to them; and (d) charged fees that provide no added value to reasonable consumers.

119. Pursuant to section 1782(a) of the CLRA, Plaintiff's counsel notified EcoCart in writing by certified mail of the particular violations of section 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of EcoCart's intent to act. In the event EcoCart fails to respond to Plaintiff's letter and/or fails to agree to rectify the problems associated with the actions detailed above, Plaintiff will amend his Complaint to include claims for actual and statutory damages, as appropriate, against EcoCart.

120. Plaintiff also seeks public injunctive relief, as described above. Such a remedy cannot be obtained through any of Plaintiff's legal claims.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

(a) Certification of this matter to proceed as a class action on behalf of the Classes;

(b) For declaratory and injunctive relief as set forth above;

(c) For an order requiring EcoCart to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d) For compensatory damages according to proof;

(e) For reasonable attorneys' fees and costs of suit;

(f) For pre-judgment interest; and

(g) Awarding such other relief as this Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: December 8, 2025

Respectfully submitted,

**KALIEL GOLD PLLC**

By: */s/ Sophia G. Gold*

Sophia Goren Gold
Jeffrey D. Kaliel
Amanda J. Rosenberg

*Attorneys for Plaintiff and the Proposed Class*